**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | |
| Kerri Lee Wallis, | ) | Case No.: 09-06669-BGC-7 |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| Bettye Ann Anglin and | ) | |
| Forrest Anglin, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | A. P. No.: 10-00010-BGC-7 |
| | ) | |
| Kerri Lee Wallis, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Background**

The matter before the Court is the <u>Complaint and Objection to Discharge Pursuant to 11 U.S.C. § 523 and  § 727</u> filed by Betty and Forrest Anglin against Kerri Lee Wallis, the debtor.  The plaintiffs contend that the debtor-defendant's debt to the plaintiffs should not be discharged in this Chapter 7 case because it is excepted under either section 523(a)(2)(A) or section 523(a)(6) of the Bankruptcy Code or that the debtor's discharge should be denied in total under section 727 of the Bankruptcy Code.

A trial on the merits was held on May 06, 2010.  Appearing were Mr. Andre' M. Toffel and Mr. James Walsh, attorneys for the plaintiffs; Mr. Ted R. Pearson, attorney for the defendant; Mr. James Estes, the debtor's stepfather; and Mr. Dorris M. Samsil, an attorney.  The matter was submitted on the testimony of Ms. Wallis, Mr. Estes and Mr. Samsil; the pleadings; exhibits; and arguments.

This over ten-year dispute between these parties is well documented.  See this Court's decisions in <u>Anglin v. Estes (In re Estes)</u>, Adversary Proceeding No. 07-00235, 2009 WL 3082623 (Bankr. N.D. Ala. September 10, 2009); <u>In re Estes</u>, 415 B.R. 568, (Bankr. N.D. Ala., 2009); and <u>Anglin v. Estes (In re Estes)</u>, <u>Memorandum Opinion on</u>

<u>Complaint and Objection to Discharge Pursuant to 11 U.S.C. §§ 523 and 727</u>, entered
March 22, 2005, Adversary Proceeding No. 02-00209, Docket No. 33.[1]

This latest part began when the plaintiffs sued Ms. Wallis, and the corporation
Karson Enterprises, LLC, d/b/a/ Print South, a sole proprietorship, in the state court of
Jefferson County, Alabama in December 2003.[2] Plaintiffs' Exhibit 3.[3] When the case
was called for trial in April 2006, the defendant Karson, "announced in open court it
consents to the granting of entry of judgment against Karson Enterprises, LLC in the
amount of One Million Dollars ($1,000,000)." Plaintiffs' Exhibit 6. The state Court
entered an order finalizing that judgment on April 17, 2006. Plaintiffs' Exhibit 6. The
action against the debtor-defendant Kerri Wallis remained open. The plaintiffs later
asked the state court to pierce the corporate veil of Karson and hold Ms. Wallis
responsible for the judgment.

## II. Initial Findings of Fact

The state court held a hearing on December 15, 2006, on the plaintiffs' motion to
pierce the corporate veil. Plaintiffs' Exhibit 7. All parties were represented by counsel.
<u>Id</u>. After hearing the evidence, the state court found Kerri Wallis to be the alter ego of
Karson Enterprises, LLC and pierced the corporate veil. Plaintiffs' Exhibit 7.

In support of their complaint to determine dischargeability, the plaintiffs rely
almost exclusively on the doctrine of collateral estoppel as it applies to the state court's
corporate-veil-piercing order imposing liability on Ms. Wallis. Consequently, this Court
has reproduced most of that order here. The state court's order includes:

> Karson Enterprises is the legal successor to two prior companies, Print
> Solutions, Inc. and Print South, LLC. Both prior entities, and their owners,
> Jaime [sic] and Debbie Estes [FN 1], have previously been sued by the

---

[1] The debtor-defendant was not technically a party to those matters; however, she is the
stepdaughter of James Estes and the daughter of Debbie B. Estes, the wife of James Estes.
Debbie Estes is the "Estes" of both <u>In re Estes</u>, 415 B.R. 568 (Bankr. N.D. Ala. 2009), and
<u>Anglin v. Estes (In re Estes)</u>, Adversary Proceeding No. 07-00235. James Estes and Debbie
Estes are the "Estes" of the <u>Anglin v. Estes (In re Estes)</u> opinion entered March 22, 2005. The
state court order on which the plaintiffs rely in this proceeding also explains the history and
specifically explains the debtor-defendant's involvement with, and relationships to, the other
parties.

[2] The relationships of the parties to Karson and Print South are described in the
opinions and orders listed above and the state court order before this Court.

[3] There were actually two companion complaints filed in the state court. Forrest Anglin
was the plaintiff in case number CV03-7637. Bettye Ann Anglin was the plaintiff in case
number CV03-7638. The disposition of both was the same. This Court will refer to them as
one case.

Plaintiffs, starting back in 2001. Plaintiffs' prior suits against Print Solutions and Print South resulted in monetary judgments for the Plaintiffs, as did Mrs. Anglin's suit against Mr. Estes personally [FN 2]. Plaintiffs' inability to collect any of the monies outstanding from those judgments necessitated this suit. In addition to the prior suits against Defendants' predecessor entities and Mr. Estes, Plaintiffs are currently suing Mrs. Estes personally. The cases against Mrs. Estes are currently pending before Judge Vance. All prior and current cases including this one are based upon a common nucleus of operative facts.

> FN 1. Mr. and Mrs. Estes are Defendant Wallis' mother and stepfather.

> FN 2. During the litigation, the Esteses' filed personal bankruptcies and a business bankruptcy on behalf of Print Solutions. The Print Solutions bankruptcy was dismissed for failure to file a valid plan. The Esteses' personal bankruptcy petition was denied for a discharge because Judge Cohen concluded they committed fraud in their bankruptcy filings.

The mass of litigation described above between Plaintiffs, Defendants and Defendants' predecessors in interest stemmed from the failure of Print Solutions, which was owned by Plaintiffs and Jaime [sic] and Debbie Estes. After the parties severed their relationship and Print Solutions filed for bankruptcy, the Esteses moved all of Print Solutions' client lists, equipment, supplies and other assets' [sic] to their new successor company, Print South, which was incorporated on November 9, 2001. The Esteses listed Debbie's son and Jaime's [sic] step-son, Cal Wallis, as the registered agent and sole member of Print South. After the Plaintiffs received judgments against Print Solutions and Mr. Estes, but could not collect any of the judgment monies, they sued Print South and Cal Wallis to recover the outstanding judgments, resulting in a judgment against Print South [FN 3].

> FN 3. After suit was filed against Cal Wallis, he voluntarily dissolved Print South.

Cal Wallis testified in the Esteses' Adversary Proceeding in Bankruptcy Court regarding their business practices. Among other things, he testified that the Esteses made payments out of Print Solutions and Print South funds for personal items, such as the mortgage on their house and various luxury car payments. Mr. Estes also testified that he made personal payments out of company funds at both Print Solutions and Print South. He further stated that no corporate meetings of Print Solutions ever took place and no one made business decisions about Print Solutions except him.

3

Cal Wallis testified that after he dissolved Print South, Mr. Estes continued his printing business by establishing Karson Enterprises. Jamie Estes is listed as Defendant Karson Enterprises' Registered Agent and Defendant Kerri Wallis is listed as the sole member [FN 4]. Ms. Wallis has testified that she does not work for Karson Enterprises and plays no part in its operation. Nevertheless, she receives substantial remuneration from Karson Enterprises in the form of monthly financial support from Mr. and Mrs. Estes. Specifically, Ms. Wallis has testified that she receives substantial monthly compensation from the Esteses in the form of payments on her condominium, car insurance, automobile, and to her personally, in the form of several hundred dollars a month to assist her with living expenses.

> FN 4. On April 21, 2006, Plaintiffs received a $1,000,000.00 judgment against Defendant Karson Enterprises from this Court.

Mr. Estes has previously testified that his sole form of income is through Karson Enterprises. Defendant Wallis further testified that Mr. and Mrs. Estes [sic] comfortable standard of living throughout the entirety of this case and the prior cases involving Print Solutions and Print South has remained steady and constant. As such, Ms. Wallis' [sic] is indirectly compensated through Karson Enterprises on a monthly basis.

In light of the facts of this case, the Court rules that Karson Enterprises was "set up as a subterfuge" and as a result, piercing the corporate veil to reach Defendant Wallis is appropriate. See Simmons v. Clark Equipment Credit Corporation, 554 So.2d 398, 400 (Ala. 1989). The Court further holds that Karson Enterprises was conceived and/or operated for fraudulent purposes and was operated as "an instrumentality or alter ego of an individual or entity with corporate control." See Messick v. Morning, 514 So.2d 892, 894 (Ala. 1987); see also Gilbert v. James Russell Motors, Inc., 812 So.2d 1269, 1273 (Ala.Civ.App. 2001). Accordingly the Court does not recognize a separate corporate existence of Karson Enterprises because it is "organized and controlled and its business conducted in such a manner as to make it merely an instrumentality of another." Forest Hill Corp. v. Latter & Blum, 29 So.2d 298, 302 (Ala. 1947). In such instances, the corporation exists merely to evade its legal liabilities.

The evidence before the Court indicates Defendant Wallis had more than an ample opportunity to discover that Defendant Karson Enterprises was being used as a conduit to avoid valid judgments against its predecessor entities and Mr. Estes, yet she nevertheless remained the sole member and continued to receive income generated from the business rather than repudiate her ownership and dissolve the company. Through a combination of illegal methods and wrongful means, this Court has

4

concluded that Defendant Wallis has participated in a shell game to continually elude Plaintiffs and avoid paying any of the judgments previously entered against Karson Enterprises, its predecessors and Jaime [sic] Estes. As a result, it is proper to pierce the corporate veil of Defendant Karson Enterprises to reach Defendant Wallis personally.

Therefore, it is hereby **ORDERED, ADJUDGED and DECREED** that Plaintiff's Motion to Pierce the Corporate Veil of Karson Enterprises, LLC, as to the $1,000,000.00 judgment against Karson Enterprises, is hereby **GRANTED**, and judgment equal to the amount of all Karson Enterprises' assets plus all monies and compensation in kind paid to Ms. Wallis directly or indirectly from Karson Enterprises through Mr. and Mrs. Estes or their agents since its inception, including interest, is hereby entered in favor of Plaintiffs, Forrest Anglin and Bettye Ann Anglin, against the Defendant, Kerri Wallis.

Order entered January 12, 2007, Case No. CV-03-7637. Plaintiffs' Exhibit 7.[4]

That order did not determine the amount of Ms. Wallis's personal liability and the judge hearing the case retired on January 15, 2007. The judge assuming this matter reviewed it along with some related matters and on June 23, 2009, and entered an order establishing the amount of Ms. Wallis's personal liability. That judge's order includes:

Pursuant to Judge Smallwood's "first" Order of January 12, 2007, Plaintiffs filed a damages submission on March 29, 2007, explaining how Defendant Wallis wrongly benefited [sic] from her involvement with Defendant Karson Enterprises, LLC, stating the specific amount wrongly received by Defendant Wallis. This pleading included a specific calculation of all of the benefits Wallis wrongfully received, which, at a minimum, were determined to be valued at $82,400.00. However, Plaintiffs requested an award in excess of $100,000.00 because of the substantial amount of information covered up and obfuscated by the Defendants throughout the case. Defendant Wallis filed a response opposing Plaintiffs' damages submission, but Plaintiffs filed a MOTION TO STRIKE Defendant's opposition. This Court agrees with Plaintiffs' contentions therein, to-wit: "*Defendant's submission is entirely based upon inadmissible hearsay, unauthenticated documents, and her attorney's personal testimony, none of which is admissible in this Court.*" The MOTION TO STRIKE is due to be, and is hereby, **GRANTED**.

---

[4] That order was not filed with the clerk of court until January 12, 2007. See Plaintiffs' Exhibit 8.

\*\*\*\*\*\*\*\*

Therefore it is hereby **ORDERED, ADJUDGED** and **DECREED** as follows:

1.  Pursuant to the Court's Order of January 12, 2007, granting Plaintiffs'
    <u>MOTION TO PIERCE THE CORPORATE VEIL OF KARSON
    ENTERPRISES, LLC TO REACH KERRI L. WALLIS</u>, filed April 27, 2006,
    damages in favor of Plaintiffs **FORREST ANGLIN** and **BETTYE ANN
    ANGLIN** are **AWARDED** against Defendant **KERRI WALLIS**, individually
    in the amount of one hundred ten thousand dollars and no cents
    [$110,000.00];

<u>Order on Pending Motions</u> entered June 23, 2009, Case No. CV-03-7637. Plaintiffs'
Exhibit 8.

The matters before this Court are the plaintiff's section 523 complaint seeking to
exclude Ms. Wallis's debt of $110,000 from her discharge and their section 727
objection to the debtor's discharge. Each is discussed separately below.

### III. Complaint to Determine Dischargeability
### Under Section 523

As stated above, the plaintiffs rely almost exclusively on the state court orders in
support of their section 523 allegation. They contend that through that order this Court
is collaterally estopped from relitigating the matters decided by the state court and that
the state court matters demonstrate that the debt is not dischargeable.

The debtor-defendant contends that the debt is dischargeable.

The issue then is: Does the state court order piercing the corporate veil satisfy
the requirements for nondischargeability of section 523(a)(2)(A) or section 523(a)(6) of
the Bankruptcy Code?

### A. Additional Findings of Fact
### and Conclusions of Law Regarding Dischargeability of the Debt

### 1. Piercing the Corporate Veil

The state court pierced the corporate veil of Karson Enterprises and found the
debtor personally liable for the judgment the plaintiffs had against the corporation. That
court found further that the debtor was liable to the plaintiffs to the extent of $110,000
on the judgment. What was the legal bases of the state court's decisions?

6

In Nimbus Technologies, Inc. v. SunnData Products, Inc., 484 F.3d 1305 (11th Cir. 2007) the Court of Appeals for the Eleventh Circuit discussed the general law in Alabama where a corporation's separate existence can be challenged. Writing for the Court, Circuit Judge Stanley F. Birch Jr. Explained:

> Under Alabama law, "it is basic that a corporation is a distinct and separate entity from the individuals who compose it as stockholders or who manage it as directors or officers." Cohen v. Williams, 294 Ala. 417, 318 So.2d 279, 281 (1975) (citation omitted). The corporate form may be set aside, however, "as a means of preventing injustice or inequitable consequences." Co-Ex Plastics, Inc. v. AlaPak, Inc., 536 So.2d 37, 38 (Ala.1988) (citation omitted). The Alabama Supreme Court has stated that "[a] separate corporate existence will not be recognized when a corporation is so organized and controlled and its business so conducted as to make it a mere instrumentality of another or the alter ego of the person owning and controlling it." Id.; see also Culp v. Econ. Mobile Homes, Inc., 895 So.2d 857, 859 (Ala.2004) ( "In certain situations the corporate entity will be disregarded and limited stockholder liability will be denied.") (citation omitted); Messick v. Moring, 514 So.2d 892, 894 (Ala.1987) ("[T]he corporate entity will be disregarded when it is used solely to avoid a personal liability of the owner ....") (citation omitted).

Id. at 1308-09.

The Alabama Supreme Court discussed the same law in See Messick v. Morning, 514 So.2d 892, 894 (Ala. 1987). Writing for the Court, Associate Justice Janie L. Shores explained:

> Alabama law has recognized that in proper situations, when the corporate form is being used to evade personal responsibility, the corporate form will be disregarded and liability will be imposed on the person controlling the corporation and subverting it to his personal use by the conduct of its business in a manner to make it merely his instrumentality. Cohen v. Williams, 294 Ala. 417, 318 So.2d 279 (1975). Although the limitation of personal liability is a valid corporate attribute, the corporate entity will be disregarded when it is used solely to avoid a personal liability of the owner while reserving to the owner the benefits gained through use of the corporate name. Bon Secour Fisheries, Inc. v. Barrentine, 408 So.2d 490 (Ala.1981) (citing Woods v. Commercial Contractors, Inc., 384 So.2d 1076 (Ala.1980)). The theory of separate corporate existence can properly be discarded, even in the absence of fraud or illegality, to prevent injustice or inequitable consequences. Cohen, supra.

Id. at 894.

What then are the factors to consider in deciding whether a corporation's separate existence should be voided to hold an individual personally liable? The Alabama Supreme Court has consistently applied three factors. They are, as defined in First Health, Inc. v. Blanton, 585 So.2d 1331 (Ala. 1991), (citing Messick v. Moring, 514 So.2d 892 (Ala.1987) and Piercing the Corporate Veil in Alabama: In Search of a Standard, 35 Ala.L.Rev. 311 (1984)): "1) inadequacy of capital; 2) fraudulent purpose in conception or operation of the business; or 3) operation of the corporation as an instrumentality or alter ego." Id. at 1334.

The question then is: Which of the above three factors did the state court apply when it pierced Karson's corporate veil? The facts in the state court's opinion are crucial to answering that question and to this Court's consideration of the plaintiffs' collateral estoppel arguments. Those facts are these:

First, the state court stressed the defendant's family's history of forming corporations and dissolving them. It wrote:

> The mass of litigation described above between Plaintiffs, Defendants and Defendants' predecessors in interest stemmed from the failure of Print Solutions, which was owned by Plaintiffs and Jaime [sic] and Debbie Estes. After the parties severed their relationship and Print Solutions filed for bankruptcy, the Esteses moved all of Print Solutions' client lists, equipment, supplies and other assets' [sic] to their new successor company, Print South, which was incorporated on November 9, 2001. The Esteses listed Debbie's son and Jaime's [sic] step-son, Cal Wallis, as the registered agent and sole member of Print South. After the Plaintiffs received judgments against Print Solutions and Mr. Estes, but could not collect any of the judgment monies, they sued Print South and Cal Wallis to recover the outstanding judgments, resulting in a judgment against Print South [FN 3].

>> FN 3. After suit was filed against Cal Wallis, he voluntarily dissolved Print South.

> Cal Wallis testified in the Esteses' Adversary Proceeding in Bankruptcy Court regarding their business practices. Among other things, he testified that the Esteses made payments out of Print Solutions and Print South funds for personal items, such as the mortgage on their house and various luxury car payments. Mr. Estes also testified that he made personal payments out of company funds at both Print Solutions and Print South. He further stated that no corporate meetings of Print Solutions ever took place and no one made business decisions about Print Solutions except him.

8

Cal Wallis testified that after he dissolved Print South, Mr. Estes continued his printing business by establishing Karson Enterprises. Jamie Estes is listed as Defendant Karson Enterprises' Registered Agent....

Order entered January 12, 2007, Case No. CV-03-7637 at 2-3. Plaintiffs' Exhibit 7.

Second, the court specifically placed much of the blame on the defendant for the problems the plaintiffs here are having in collecting their judgments. It wrote:

Defendant Kerri Wallis is listed as the sole member [of Karson Enterprises]. Ms. Wallis has testified that she does not work for Karson Enterprises and plays no part in its operation. Nevertheless, she receives substantial remuneration from Karson Enterprises in the form of monthly financial support from Mr. and Mrs. Estes. Specifically, Ms. Wallis has testified that she receives substantial monthly compensation from the Esteses in the form of payments on her condominium, car insurance, automobile, and to her personally, in the form of several hundred dollars a month to assist her with living expenses.

Mr. Estes has previously testified that his sole form of income is through Karson Enterprises. Defendant Wallis further testified that Mr. and Mrs. Estes [sic] comfortable standard of living throughout the entirety of this case and the prior cases involving Print Solutions and Print South has remained steady and constant. As such, Ms. Wallis' [sic] is indirectly compensated through Karson Enterprises on a monthly basis.

Id. at 3-4 (parenthetical added) (footnote omitted).

Third, the state court concluded that because of the debtor-defendant's actions, along with her mother's and stepfather's, Karson Enterprises's separate corporate existence should be disregarded. It wrote:

In light of the facts of this case, the Court rules that Karson Enterprises was **"set up as a subterfuge"** and as a result, piercing the corporate veil to reach Defendant Wallis is appropriate. See Simmons v. Clark Equipment Credit Corporation, 554 So.2d 398, 400 (Ala. 1989). The Court further holds that Karson Enterprises was conceived and/or **operated for fraudulent purposes** and was operated as "an instrumentality or alter ego of an individual or entity with corporate control." See Messick v. Morning, 514 So.2d 892, 894 (Ala. 1987); see also Gilbert v. James Russell Motors, Inc., 812 So.2d 1269, 1273 (Ala.Civ.App. 2001). Accordingly the Court does not recognize a separate corporate existence of Karson Enterprises because it is "organized and controlled and its business conducted in such a manner as to make it merely an instrumentality of another." Forest Hill Corp. v. Latter & Blum,

9

29 So.2d 298, 302 (Ala. 1947).  In such instances, the corporation exists merely to evade its legal liabilities.

Id. at 4 (emphasis added).

Fourth, having found that the separate corporate existence should be disregarded, the state court found that the debtor-defendant should be held personally liable for the debt the corporation owed to the plaintiffs.  The court wrote:

> The evidence before the Court indicates Defendant Wallis had more than an ample opportunity to discover that Defendant Karson Enterprises was being used as a conduit **to avoid valid judgments** against its predecessor entities and Mr. Estes, yet she nevertheless remained the sole member and continued to receive income generated from the business rather than repudiate her ownership and dissolve the company. Through a combination of **illegal methods** and **wrongful means**, this Court has concluded that Defendant Wallis has participated **in a shell game to continually elude Plaintiffs and avoid paying any of the judgments** previously entered against Karson Enterprises, its predecessors and Jaime [sic] Estes.  As a result, it is proper to pierce the corporate veil of Defendant Karson Enterprises to reach Defendant Wallis personally.

Id. at 4-5 (emphasis added).

What remains then is for this Court to decide whether the findings in the state court order satisfy the nondischargeability standards of section 523.  To do that, this Court must decide the effect of collateral estoppel on this matter.

## 2.  Collateral Estoppel

Again as stated above, the plaintiffs rely almost exclusively on the state court opinion for support of their contention that the now personal debt of the debtor-defendant should not be discharged in this Chapter 7 bankruptcy case.  The plaintiffs contend that this Court is collaterally estopped from relitigating the matters decided by the state court.  They conclude that the state court order establishes that the defendant's debt is not dischargeable under the Bankruptcy Code pursuant to the fraud provisions of section 523(a)(2)(A) or the willful and malicious provisions of section 523(a)(6).

10

### a. Elements of Collateral Estoppel

It is universally recognized that "collateral estoppel" applies in dischargeability matters. <u>Grogan v. Garner</u>, 498 U.S. 279 (1991).[5] To determine the effect of that application and whether the state court's ruling satisfied the section 523 requirements, this Court must look to both the federal law and state law standards of collateral estoppel.

Regarding the federal standards of collateral estoppel, this Court wrote in an unrelated proceeding:

> Collateral estoppel prevents the relitigation of issues already litigated and determined by a valid and final judgment in another court. <u>HSSM # 7 Limited Partnership v. Bilzerian (In re Bilzerian )</u>, 100 F.3d 886, 892 (11th Cir.1996), cert. denied, 523 U.S. 1093 (1998). It is well-established that the doctrine of collateral estoppel applies in a proceeding to determine the dischargeability of a debt in bankruptcy. <u>Id</u>. The decision rendered by the Supreme Court in <u>Marrese v. American Academy of Orthopaedic Surgeons</u>, 470 U.S. 373 (1985) requires bankruptcy courts, in dischargeability proceedings, to utilize a state's principles of collateral estoppel to determine the issue preclusive effect of a judgment rendered by a court of that state. "If the prior judgment was rendered by a state court, then <u>the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect</u>." <u>St. Laurent v. Ambrose (In re St. Laurent )</u>, 991 F.2d 672, 676 (11th Cir.1993).

<u>In re Farris</u>, Adversary Proceeding No. 06-00121, 2007 WL 4533503 at *2 (Bankr. N.D. Ala. Dec 19, 2007) (emphasis added).

As the federal standard quoted above requires, the key then is to determine the collateral estoppel standards in Alabama. This Court addressed that issue in the same opinion. It wrote:

> Under Alabama law, a prior judgment may be accorded collateral estoppel effect if: (1) the issue involved in the prior proceeding was identical to the issue involved in the present proceeding; (2) the issue was "actually litigated" in the prior proceeding; (3) the resolution of the issue was

---

[5] This Court has had several occasions to consider collateral estoppel in dischargeability proceedings. See <u>In re Farris</u>, Adversary Proceeding No. 06-00121, 2007 WL 4533503 (Bankr. N.D. Ala. December 19, 2007); <u>In re Bennitt</u>, Adversary Proceeding No. 05-00164, 2007 WL 1805085 (Bankr. N.D. Ala. June 21, 2007); <u>In re Bennitt</u>, 348 B.R. 820 (Bankr. N.D. Ala. 2006); <u>In re Wald</u>, 208 B.R. 516 (Bankr. N.D. Ala. 1997); and <u>In re Cornner</u>, 191 B.R. 199 (Bankr. N.D. Ala. 1995).

necessary to the prior judgment; and (4) the parties in the present proceeding are the same as those involved in the prior proceeding. <u>Lott v. Toomey</u>, 477 So.2d 316, 319 (Ala.1985). A judgment by consent satisfies the "actually litigated" requirement and is, with respect to issues actually decided by that judgment, as conclusive between the parties as a judgment entered after the conclusion of a trial. <u>Sanders v. First Bank of Grove Hill</u>, 564 So.2d 869, 872 (Ala.1990); <u>Leverette ex rel. Gilmore v. Leverette</u>, 479 So.2d 1229, 1237 (Ala.1985); <u>A.B.C. Truck Lines v. Kenemer</u>, 247 Ala. 543, 548, 25 So.2d 511, 515-516 (1946).

<u>Id</u>.

What remains then is for this Court to apply those four elements to the state court opinion finding the defendant personally liable and to determine whether that decision can be the basis for finding the personal debt of the defendant to the plaintiffs to be dischargeable under sections 523(a)(2)(A) or 523(a)(6).

### b.  Application of Elements to Dischargeability Under Section 523(a)(2)(A) and Section 523(a)(6)

As stated above, the four elements of collateral estoppel in Alabama are:

1.  the issue involved in the prior proceeding was <u>identical to the issue</u> involved in the present proceeding;

2.  the issue was "<u>actually litigated</u>" in the prior proceeding;

3.  the resolution of the issue was <u>necessary to the prior judgment</u>; and

4.  the <u>parties</u> in the present proceeding <u>are the same</u> as those involved in the prior proceeding.

Each is discussed below in relation with the plaintiffs' allegations under section 523(a)(2)(A) and section 523(a)(6) of the Bankruptcy Code.

### (1)  Identity of Issue

### (a)  Section 523(a)(2)(A)

Section 523(a)(2)(A) of the Bankruptcy Code makes nondischargeable debts for money, property, services or credit obtained by a debtor by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an

12

insider's financial condition." 11 U.S.C. § 523(a)(2)(A). To have a debt declared nondischargeable pursuant to 523(a)(2)(A), a creditor must prove:

1. The debtor made a false statement;

2. With the purpose and intention of deceiving the creditor;

3. The creditor relied on such false statement;

4. The creditor's reliance on the false statement was justifiably founded;

5. The creditor sustained damage as a result of the false statement.

Fuller v. Johannessen (In re Johannessen), 76 F.3d 347, 350 (11th Cir.1996).

In regard to the identity of issues between the fraud that must be proved for nondischargeability and the fraud that can exist under Alabama law, there can be quite a difference. "Fraud" in Alabama is the extensive subject of many statutes and judicial opinions. Unlike nondischargeable fraud, there are different types of fraud in Alabama law with varying degrees of intent. For example, section 6-5-101 of the Code of Alabama provides, "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud." Code of Ala. 1975, § 6-5-101. Under section 6-5-101, a false representation, even if made by mistake or innocently, is actionable and entitles a plaintiff to compensatory damages. Hall Motor Co. v. Furman, 285 Ala. 499, 504, 234 So.2d 37, 41 (1970). Fraudulent intent, or an intent to deceive, is not essential to a recovery under that section. Standard Oil Co. v. Johnson, 276 Ala. 578, 581, 165 So.2d 361, 364 (1964). Neither is knowledge by the defendant of the falsity of his or her representations. First Nat'l Bank of Auburn v. Dowdell, 275 Ala. 622, 626, 157 So.2d 221, 225 (1963); Barrett v. Hanks, 275 Ala. 383, 385, 155 So.2d 339, 342 (1963).[6]

Thus, Alabama law demonstrates that the standard of proof for certain types of fraud under state law is far less than the standard for proving nondischargeable fraud in a bankruptcy context. Hence, where fraud is found in a state court proceeding, a bankruptcy court must determine whether that "fraud" rises to the level of nondischargeable fraud in the bankruptcy context.

Based on the facts, this Court cannot find that the fraud described in the state court order at issue rises to the level required for nondischargeability under the

_____

[6] See this Court's decision in In re Bennitt, 348 B.R. 820 (Bankr. N.D. Ala. 2006) (from which this paragraph was taken) for an additional discussion on the problems that can surface when comparing state and federal fraud.

13

Bankruptcy Code.  Thus, there is no identity of issue and collateral estoppel cannot apply as to this Court on this issue.[7]  As such, because all elements of collateral estoppel must be satisfied, the Court need not consider the remaining three elements of collateral estoppel for the fraud allegations.[8]  But as the discussion below demonstrates, all four elements in regard to the section 523(a)(6) allegations are discussed.

### (b)  Section 523(a)(6)

Section 523(a)(6) of the Bankruptcy Code makes non-dischargeable a debt for any "willful and malicious" injury caused by a debtor to another person. The definitions of those two particular terms of art have long been established and recognized in this Circuit:

---

[7]Because there is no other evidence to support a section 523(a)(2)(A) allegation, the Court cannot find independent of collateral estoppel that the debt is not dischargeable under section 523(a)(2)(A).

[8] This issue was addressed in JRC Lumber Corp. V. Suarez (In re Suarez), Adversary Proceeding No. 08-1713,  2010 WL 1382110 (Bankr. D.N.J. Apr 05, 2010).  The facts and legal analysis are almost identical to the instant case, not only for comparison of issues, but also in deciding the collateral estoppel effect of a judgment against an individual where the corporate veil was pierced and whether that judgment was dischargeable in bankruptcy.  In Suarez the state court pierced the corporate veil and found an individual debtor-defendant personally liable for a debt of a corporation. The issue there, like here, was whether collateral estoppel applied and thus whether the state court decision would serve as the basis denying dischargeability of the debt under sections 523(a)(2)(A) or 523(a)(6) nondischargeability.

In Suarez the plaintiff sold assets to a corporation owned by the debtor-defendant's father.  The corporation defaulted on its obligations to the plaintiff and later ceased operating. A new corporation was formed where the assets of the first were sent to the second, without consideration. The defendant-son was listed as the new corporation's president, although the representation was made that his father was the actual owner and made all of the business decisions.  The plaintiff sued the defendant in state court.  The New York court entered judgements against the corporations and others and through piercing the corporate veil, held the defendant-son personally liable.  After the defendant filed for bankruptcy protection, the plaintiff brought an action fro nondischargeability under sections 523(a)(2)(A), 523(a)(4), and 523(a)(6).  In regard to the comparison of the standards required to prove nondischargeable fraud in bankruptcy to the standards of state law fraud, the court in Suaraz said, "With respect to... §523(a)(2)(A)... of the Bankruptcy Code, the legal standards for establishing claims under these provisions are not substantially similar to the legal standards for establishing a claim... for piercing the corporate veil." Id. at *10.  In contrast, the Court in Suarez found that the corporate debt, through piercing of the corporate veil and by way of collateral estoppel, was nondischargeable in the debtor's case under section 523(a)(6).  The opinion there is similar to the instant one and this Court relies on it.

14

In order that a provable liability come within this exception the injuries must have been both willful and malicious. An injury to person or property may be a malicious injury within this provision if it was wrongful and without just cause or excuse, even in the absence of personal*231 hate, spite or ill will. The word "willful" means nothing more than intentionally doing an act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury.

Vickers v. Home Indemnity Co. (In re Vickers), 546 F.2d 1149, 1150 (5th Cir.1977).[9]

Moreover, the U.S. Supreme Court has addressed those accepted definitions by reiterating and reemphasizing that non-dischargeability under section 523(a)(6) requires, "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Reckless, wanton, or negligent acts will not suffice. The debtor must have actually intended, "'the consequences of an act,' [i.e., the injury] not simply 'the act itself.' " Id. at 61-62, 118 S.Ct. 974 (quoting Restatement (Second) of Torts § 8A, comment a, p. 15 (1964)).[10]

The next step then is to determine whether the corporate-veil-piercing factors established by the Alabama Supreme Court and the above willful and malicious-dischargeability factors have an identity of issue.

As stated above, the factors to consider in deciding whether the corporation's separate existence should be voided to hold an individual personally liable are: 1) inadequacy of capital; 2) fraudulent purpose in conception or operation of the business; or 3) operation of the corporation as an instrumentality or alter ego. In regard to "identity of issues", how do these factors compare to the standards for willful and malicious behavior?

The general issue in a willful and malicious dischargeability proceeding is whether someone, without just cause, did something to another with the intent of harming that other. How does that compare to the general issue in piercing the corporate veil?

---

[9] See also Hope v. Walker (In re Walker), 48 F.3d 1161, 1164 (11th Cir.1995); In re Ikner, 883 F.2d 986, 991 (11th Cir.1989); In re Latch, 820 F.2d 1163, 1166 n. 4 (11th Cir.1987); In re Dardar, 620 F.2d 39, 40 (5th Cir.1980).

[10] See this Court's opinion in Ledoux v. Tanner (In re Tanner), 365 B.R. 217 (Bankr. N.D. Ala. 2007).

15

There are many reasons why a corporate veil may be pierced in Alabama. The corporate veil may be pierced where a corporation is set up as a subterfuge, where shareholders do not observe the corporate form, where the legal requirements of corporate law are not complied with, where the corporation maintains no corporate records, where the corporation maintains no corporate bank account, where the corporation has no employees, where corporate and personal funds are intermingled and corporate funds are used for personal purposes, or where an individual drains funds from the corporation.

As quoted above, writing for the Court in First Health, Inc. v. Blanton, 585 So.2d 1331 (Ala. 1991), Justice Mark Kennedy listed the Alabama Court's factors. He explained:

> In Messick v. Moring, 514 So.2d at 894, citing Piercing the Corporate Veil in Alabama: In Search of a Standard, 35 Ala.L.Rev. 311 (1984), this Court stated the following factors as typical justification for piercing the corporate veil: 1) inadequacy of capital; 2) fraudulent purpose in conception or operation of the business; **or** 3) operation of the corporation as an instrumentality or alter ego.

Id. at 1334 (emphasis added).

That listing of the factors in the alternative, that is joining them with "or", is important for three reasons. It is important first to establish that a corporate veil can be pierced for any of the three reasons. It is important second as the state court decision this Court is reviewing applied the third factor to pierce Karson's corporate veil. It is important third because, as defined in Alabama law, it is this third factor that mirrors bankruptcy's willful and malicious dischargeability standards.[11]

Supporting the Alabama Supreme Court's recognition of three independent factors for piercing the corporate veil, Justice Kennedy explained further in First Health:

> In Messick, we enunciated the standard to be applied to determine whether to disregard the corporate entity when the **third** theory is espoused:

---

[11] Because the state court pierced Karson's corporate veil under the third factor, a factor that mirrors the bankruptcy dischargeability standards for willful and malicious behavior, this Court has not considered whether the other two piercing factors share common issues with bankruptcy dischargeability. This Court has also not considered whether a piercing under one of the other two standards could lead to nondischargeability of a debt in bankruptcy for willful and malicious behavior or under other section 523 exceptions.

16

In an attempt to circumvent some of the difficulties in applying conclusory terms such as ''instrumentality,'' "alter ego" and "adjunct," we announced, in <u>Kwick Set Components, Inc. v. Davidson Ind.</u>, Inc., 411 So.2d 134 (Ala.1982), a standard to be applied in order to determine whether the corporate entity should be disregarded when excessive control is the ground. While acknowledging that the dominating party may be an individual or another corporation, we stated the elements essential for imposition of liability on the dominant party as follows:

> 1) The dominant party must have complete control and domination of the subservient corporation's finances, policy and business practices so that at the time of the attacked transaction the subservient corporation had no separate mind, will, or existence of its own;

> 2) The control must have been **misused** by the dominant party. Although fraud or the violation of a statutory or other positive legal duty is misuse of control, when it is necessary to prevent injustice or inequitable circumstances, misuse of control will be presumed;

> 3) The misuse of this control must proximately cause the **harm** or **unjust loss** complained of.

<u>Lowendahl v. Baltimore & O. Ry.</u>, 247 A.D. 144, 287 N.Y.S. 62 (1936).

514 So.2d at 894-95.

<u>Id</u>. at 1334-35 (emphasis added).

The state court that pierced Karson's corporate veil did so because it found:

In light of the facts of this case, the Court rules that Karson Enterprises was **"set up as a subterfuge"** and as a result, piercing the corporate veil to reach Defendant Wallis is appropriate. The Court further holds that Karson Enterprises was conceived and/or **operated for fraudulent purposes** and was operated as "an instrumentality or alter ego of an individual or entity with corporate control." Accordingly the Court does not recognize a separate corporate existence of Karson Enterprises because it is "organized and controlled and its business conducted in such a manner as to make it merely an instrumentality of another." In such instances, the corporation exists merely to evade its legal liabilities.

The evidence before the Court indicates Defendant Wallis had more than an ample opportunity to discover that Defendant Karson Enterprises was being used as a conduit **to avoid valid judgments** against its

17

predecessor entities and Mr. Estes, yet she nevertheless remained the sole member and continued to receive income generated from the business rather than repudiate her ownership and dissolve the company. Through a combination of **illegal methods** and **wrongful means**, this Court has concluded that Defendant Wallis has participated **in a shell game to continually elude Plaintiffs and avoid paying any of the judgments** previously entered against Karson Enterprises, its predecessors and Jaime [sic] Estes.  As a result, it is proper to pierce the corporate veil of Defendant Karson Enterprises to reach Defendant Wallis personally.

Id. (citations omitted).  Clearly, that Court relied on the Alabama Supreme Court's third factor, that is domination.

This Court explained in In re Coala, 182 B.R. 887 (Bankr.N.D.Ala.1995) that where domination is the reason for piercing the corporate veil, something in addition to that control must be present before a court may pierce a corporate veil.  That something is what directly links this factor for piercing of a corporate veil with the standards for denying dischargeability for willful and malicious behavior, and it is what substantiates the identity of issues between the two.  This Court wrote in Coala:

Mere domination or control of a corporation by its stockholders is not however, enough to allow a piercing of the corporate veil. The stockholders must have misused that control and **harm or loss must have resulted** from it. It is typical for the majority stockholders to control the operation of a closely held corporation. The fact that majority stockholders control the business of the corporation does not make that corporation a sham. The law, in fact, recognizes one-person corporations and accepts the fact of domination by one person. Therefore, in order to justify piercing the veil of corporate existence, it is not enough to show that the corporation may have been controlled by one or a few persons. In the absence of **fraud or inequity**, the shareholders will be protected from individual liability by the corporate entity, even though the corporation is controlled by the shareholders. In order to pierce the corporate veil, the complaining party must show not only that the dominant party has complete control and domination of the subservient corporation's finances, policy, and business practices but also that it misused that control to his **detriment**. If the stockholders dominated the subservient corporation, and were guilty of fraud in asserting the corporate existence, or if recognition of the corporate existence will result in **injustice** or **inequitable consequences**, the corporate veil may be pierced. If the corporation has been organized solely by stockholders to avoid personal liability and used by the stockholders for their personal purpose,

Case 10-00010-BGC    Doc 22    Filed 03/31/11    Entered 03/31/11 13:34:31    Desc Main
Document    Page 18 of 24

subversive to the rights of others, the corporate veil can be pierced to impose personal liability on the stockholders.

Id. at 894-95 (emphasis added) (footnote citations omitted). In other words, like willful and malicious behavior, the third piercing factor requires a finding of harm.

As Justice J. Gorman Houston, Jr. wrote for the Alabama Supreme Court in Simmons v. Clark Equipment Credit Corp., 554 So.2d 398 (Ala.1989), "mere domination cannot be enough for piercing the corporate veil. There must be the added elements of misuse of control and harm or loss resulting from it. Id. at 400 (emphasis added).

Applying this, and the other factors adopted by the Alabama Supreme Court, this Court finds that before the state court could have pierced Karson's corporate veil, it had to find that the defendant intended to control the corporation, that this action was without just cause, and that this action was intended, as the state court found, to harm the plaintiffs.

Consequently, based on the above, the Court finds that there is identity of issues between proving a piercing the corporate veil and proving willful and malicious behavior in this bankruptcy nondischargeability proceeding, at least as to the Alabama Supreme Court's third factor.

What remains is for the Court to apply the other three collateral estoppel factors to the section 523(a)(6) allegations.

## (2)  Actually Litigated

The second prong of collateral estoppel is that the issue was "actually litigated" in the prior proceeding. As quoted above, the state court found:

In light of the facts of this case, the Court rules that Karson Enterprises was **"set up as a subterfuge"** and as a result, piercing the corporate veil to reach Defendant Wallis is appropriate. The Court further holds that Karson Enterprises was conceived and/or **operated for fraudulent purposes** and was operated as "an instrumentality or alter ego of an individual or entity with corporate control." Accordingly the Court does not recognize a separate corporate existence of Karson Enterprises because it is "organized and controlled and its business conducted in such a manner as to make it merely an instrumentality of another. In such instances, the corporation exists merely to evade its legal liabilities.

The evidence before the Court indicates Defendant Wallis had more than an ample opportunity to discover that Defendant Karson Enterprises was

19

being used as a conduit **to avoid valid judgments** against its predecessor entities and Mr. Estes, yet she nevertheless remained the sole member and continued to receive income generated from the business rather than repudiate her ownership and dissolve the company. Through a combination of **illegal methods** and **wrongful means**, this Court has concluded that Defendant Wallis has participated **in a shell game to continually elude Plaintiffs and avoid paying any of the judgments** previously entered against Karson Enterprises, its predecessors and Jaime [sic] Estes.  As a result, it is proper to pierce the corporate veil of Defendant Karson Enterprises to reach Defendant Wallis personally.

Id. (citations omitted).

As the above demonstrates, the state court found that the defendant committed wrongful acts with the intent of harming the plaintiffs.[12]  She set up the corporation as a subterfuge, operated it for fraudulent purposes, used the corporation to avoid valid judgments, operated the corporation illegally and wrongful, and participated in a "shell game" to elude the plaintiffs.[13]  Clearly, the state court found that the defendant's actions were taken to intentionally inflict harm.  The state court's eventual finding of a judgment for $110,000 is clear evidence that "harm" did occur.

As discussed above, "collateral estoppel assigns a preclusive effect only to those issues actually and necessarily decided in the prior lawsuit." S.E.L. Maduro (Florida), Inc. v. M/V Antonio de Gastaneta, 833 F.2d 1477, 1483 (11th Cir.1987). As to the matters at hand, the Court finds that the issue of willful and malicious behavior was actually litigated before the state court and therefore satisfies the second prong of collateral estoppel.

### (3)  Resolution of Issue was Necessary

The third prong of collateral estoppel is that the resolution of the issue was necessary to the prior judgment.

---

[12] "In order for the state court litigation to have collateral estoppel effect in a bankruptcy court, it must be clear that the factual determinations made by the trier of fact parallel the facts necessary to meet the federal standard of nondischargeability." Atchley v. Stover (In re Stover), 88 B.R. 479, 483 (Bankr.S.D.Ga.1988).  That standard is satisfied here.

[13] Even if nothing else supports this conclusion, a finding of fraudulent conduct can support a finding of willful and malicious behavior.  As the court in Suarez explained, "actions undertaken with an actual intent to defraud can serve as a basis for finding that conduct is 'willful and malicious....'" Id. at *9.

20

As quoted above in regard to the "identity of issues" prong, Justice J. Gorman Houston, Jr. wrote for the Alabama Supreme Court in <u>Simmons v. Clark Equipment Credit Corp.</u>, 554 So.2d 398 (Ala.1989), "mere domination cannot be enough for piercing the corporate veil. <u>There must be the added elements of misuse of control and harm or loss resulting from it</u>. <u>Id</u>. at 400 (emphasis added).

As discussed above, there are many events that may trigger piercing the corporate veil, but in regard to a piercing under the third Alabama Supreme Court factor, that is domination as explained by Justice Kennedy in <u>First Health</u>, the law in Alabama <u>requires</u> a finding of <u>harm or loss</u> from the domination.

Hence, resolution of the willful and malicious effect of the defendant's behavior was necessary for the state court to pierce Karson's corporate veil.

### (4)  Same Parties

The fourth prong of collateral estoppel is that the parties in the present proceeding are the same as those involved in the prior proceeding.  The plaintiffs in the present proceeding were the plaintiffs in the prior proceeding.  The defendant in the present proceeding was one the defendants in the prior proceeding.[14]  Consequently, this fourth prong of collateral estoppel is satisfied.

### B.  Finding of Nondischargeability of Debt
### Under Section 523(a)(6)

Because all four elements of collateral estoppel are satisfied, the Court finds that it is estopped from relitigating these issues.  Consequently, the defendant's $110,000 debt, by way of the state court's piercing the Karson Enterprises's corporate veil, is not dischargeable in this case under section 523(a)(6).[15]

---

[14] As noted above, technically there were two prior proceedings.  Each plaintiff in the present proceeding filed a separate complaint against the defendant in the present proceeding. See Plaintiffs' Exhibit 7.

[15] In 2007, the plaintiffs filed a similar adversary proceeding against Mrs. Estes, the defendant's mother.  That complaint also sought nondischargeability for a debt the plaintiffs have against Karson's predecessor corporation Print Solutions, Inc., a debt which the state court had found to be Mrs. Estes' personal debt, also through a piercing of the corporate veil. Unlike the current proceeding, this Court denied that complaint for nondischargeability. The facts there were quite different than the ones here.  See <u>In re Estes</u>, 415 B.R. 568 (Bankr. N.D. Ala. 2009) (motion to amend denied, <u>In re Estes</u>, Adversary Proceeding No. 07-00235, 2009 WL 3082623 (Bankr. N.D. Ala. Sep 10, 2009)).

21

## IV.  Objection to Discharge Under Section 727

The sole count in the plaintiffs' complaint relating to their objection to the debtor's discharge is this:

> Ms. Wallis failed to list her ownership of Karson Enterprises, LLC, in her Bankruptcy Petition dated November 25, 2009, on Schedule B.
>
> Therefore, pursuant to 11 U.S.C. §727(a)(4), the Debtor knowingly and fraudulently made a false oath.

Complaint and Objection to Discharge at 9, Docket No. 1.[16]

In other words, the plaintiffs contend that the defendant owned stock in Karson Enterprises at the time she filed her bankruptcy petition. They contend further that the defendant did not list that asset in her petition even though she swore that the facts in her petition were true.  They conclude that the defendant committed a false oath by swearing that the filed petition was correct when it did not include the asset.

Section 727(a)(4)(A) provides, "The court shall grant the debtor a discharge, unless... the debtor knowingly and fraudulently, in or in connection with the case... made a false oath or account...."  11 U.S.C. § 727(a)(4)(A).

To prevail on an objection to discharge made pursuant to section 727(a)(4)(A), the plaintiff must prove by a preponderance of the evidence that, "(1) the debtor made a false statement under oath;  (2) the statement was false;  (3) the debtor knew the statement was false;  (4) the debtor made the statement with fraudulent intent;  and (5) the statement was material to the bankruptcy case." Sholdra v. Chilmark Financial, LLP (In re Sholdra), 249 F.3d 380, 382 (5th Cir. 2001), cert. denied, 534 U.S. 1042 (2001). Accord, Keeney v. Smith (In re Keeney), 227 F.3d 679, 685 (6th Cir. 2000).

Bankruptcy Rule 1008 requires, "All petitions, lists, schedules, statements and amendments..." to either "be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746."  Fed. R. Bankr. P. 1008.  The unsworn declaration provided for in 28 U.S.C. § 1746 must be signed and dated by the person making the declaration and substantially conform to the language, "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct."  28 U.S.C. § 1746.

An unsworn declaration made under penalty of perjury pursuant to 28 U.S.C. § 1746 is the equivalent of a sworn verification for purposes of section 727(a)(4)(A).

---

[16] In deciding this matter, the Court adopts the findings of fact and conclusions of law expressed above regarding the section 523 issues.

22

<u>Beaubouef v. Beaubouef (In re Beaubouef)</u>, 966 F.2d 174, 178 n. 2 (5th Cir. 1992);
<u>Smith v. Grondin (In re Grondin)</u>, 232 B.R. 274, 276 (1st Cir. BAP 1999).

      Section 1746 reads in part:

      Wherever, under any law of the United States or under any rule,
      regulation, order, or requirement made pursuant to law, any matter is
      required or permitted to be supported, evidenced, established, or proved
      by the sworn declaration, verification, certificate, statement, oath, or
      affidavit in writing of the person making the same ... such matter may, with
      like force and effect, be supported, evidenced, established, or proved by
      the unsworn declaration, certificate, verification, or statement, in writing of
      such person which is subscribed by him, as true under penalty of
      perjury....

28 U.S.C. § 1746.

      If a plaintiff in an action brought pursuant to section 727(a)(4)(A) proves that the
debtor made a false oath in or in connection with a bankruptcy case regarding a matter
that is material to that case or to administration of the bankruptcy estate, a prima facie
case is made out for denial of the debtor's discharge. The burden then falls on the
debtor to prove that the misrepresentation or material omission was not knowingly or
fraudulently made. Absent such proof, fraudulent intent may be inferred and denial of
the debtor's discharge is warranted. Numerous courts have considered these
situations.

      The court in <u>Casa Investment Co. v. Brenes (In re Brenes)</u>, 261 B.R. 322, 334
(Bankr. D. Conn. 2001) summarized, "Once the objecting creditor meets its burden of
proof and has produced persuasive evidence of a false statement, the burden of
production shifts to the debtor to come forward with some credible explanation for a
false statement on the schedules." <u>Id</u>.

      It is clear to this Court that at the time the state court decided to pierce Karson's
corporate veil and hold the defendant liable for the judgment against that corporation,
the defendant was the owner of all or some part of Karson Enterprises. That is what
the state court found. That finding was however in January 2007 and related to facts
years before, not at the time the debtor filed her bankruptcy petition on November 12,
2009.

      While there is no dispute that the debtor did not list an ownership in Karson
Enterprises on her bankruptcy petition, the factual question is, is there evidence that the
debtor own stock in Karson Enterprises when she filed her petition? If she did, the legal
question is, when she swore that her petition was correct, did she knowingly and
fraudulently make a false oath?

23

The burden is on the plaintiffs to prove by a preponderance of the evidence that the debtor made a false oath in regard to any ownership of Karson Enterprises.  In re Bishop, 420 B.R. 841 (Bankr.N.D.Ala. 2009).[17]  This is a formidable burden as an objection to discharge is strictly construed against the objecting party and in favor of the debtor.  In re Ross, 379 B.R. 207, 211 (Bankr.M.D.Fla. 2007).

The only evidence before the Court on these issues is the Plaintiffs' Exhibit 1, a copy of a page from the internet site of the Alabama Secretary of State showing the defendant as the sole member of Karson Enterprises, LLC, and the testimony of the defendant and her stepfather Mr. Estes.  The testimony refutes the plaintiffs' contention that the debtor owned stock in Karson Enterprises when she filed her current petition. Plaintiffs' Exhibit does not offer any detail to the contrary.

Even if the Court could find that there is evidence that the debtor owned stock in Karson Enterprises when she filed her current case, which the Court does not, there is no evidence that she knowingly and fraudulently gave a false oath about that ownership.  The plaintiffs did not meet their burden of proving by a preponderance of the evidence that the debtor's discharge should be denied under section 727(a)(4).

Based on the above, the Court finds that the plaintiffs' objection to the debtor's discharge is due to be overruled.

A separate Order will be entered contemporaneously with this Memorandum Opinion.

Dated:  March 31, 2011              /s/Benjamin Cohen
                                   BENJAMIN COHEN
                                   United States Bankruptcy Judge

BC:pb

---

[17] In Bishop the court wrote:

In a trial on a complaint objecting to a discharge, the plaintiff bears the burden of proving that a discharge is unwarranted. Fed. R. Bankr. P. 4005. To carry its burden, the plaintiff must prove such discharge is unwarranted by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). If the plaintiff establishes a prima facie case, the burden shifts to the debtor to make a credible explanation of his actions. Buckeye Retirement Co., L.L.C. v. Howells (In re Howells ), 365 B.R. 764, 768 (Bankr.N.D.Ohio 2007).

Id. at 849.

24